**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DANIELLE VINTON,<br><br>Plaintiff,<br><br>v.<br><br>TU MODA SPA FOR BEAUTY & WELLNESS, INC., and JOSUE ROSA,<br><br>Defendants. | **CIVIL ACTION**<br>**NO. 4:16-cv-11733-DHH** |

**ORDER**

**November 6, 2017**

Hennessy, M.J.

Before me is Defendants' second motion to dismiss the complaint in this action for failure to state a claim. Docket #26; see Fed. R. Civ. P. 12(b)(6). Plaintiff filed an opposing memorandum on June 26, 2017. See Docket #28. In this second motion, Defendants seek dismissal of Counts I and II (but not Count III) of Plaintiff's First Amended Complaint. For the reasons that follow, the motion is GRANTED WITHOUT PREJUDICE as to Count I and DENIED as to Count II. I allow Plaintiff a final chance to amend Count I to state a viable claim for unpaid overtime wages.

I. BACKGROUND

In this employment action, Plaintiff Danielle Vinton seeks recovery from Defendants Tu Moda Spa for Beauty & Wellness, Inc. and Josue Rosa, Tu Moda's owner and manager, for alleged unpaid wages, failure to provide meal breaks, unpaid overtime wages, illegal wage deductions, and failure to pay accrued sick time. See generally Docket #23. Defendants

removed this action from Worcester District Court, Docket #1, and the parties consented to my jurisdiction, Docket #15. Defendants previously moved to dismiss Plaintiff's original complaint for failure to state a claim. See Docket #11. I partially granted that motion without prejudice, denying dismissal of Count III (failure to pay sick time) and affording Plaintiff an opportunity to remedy defects in Count I (failure to pay for hours worked and for overtime) and Count II (illegal wage deductions). Docket #20. Plaintiff took up that opportunity and filed a First Amended Complaint on May 4, 2017. Docket #23.

The First Amended Complaint alleges the following.[1] Plaintiff worked for Defendants as an esthetician from September 30, 2012 through February 15, 2016. Docket #23 ¶ 2. Her schedule varied, but she most often worked twenty-five hours per week. Id. ¶ 17. Defendants paid Plaintiff weekly on a commissions-only basis. Id. ¶ 13.

Count I of the First Amended Complaint contends that Defendants failed to pay Plaintiff for hours worked and for overtime and did not allow Plaintiff meal breaks to which she was entitled. In support of these claims, Plaintiff avers that Defendants forced her to attend meetings, report for unpaid work days, and spend "other large blocks of time" on tasks for which she received no commissions and thus no compensation. Id. These tasks exceeded one fifth of Plaintiff's total work time "for weeks in which those [unpaid] days and meetings occurred." Id. ¶¶ 2, 18. Defendants also "occasionally" directed Plaintiff to spend an entire workday on uncompensated tasks, id. ¶ 16, and required that Plaintiff arrive at work fifteen minutes before her first appointment, id. ¶ 19. Plaintiff submits that she consequently received insufficient

[1] This Order does not discuss Count III of the First Amended Complaint, which Defendants do not challenge.

compensation for her work, in violation of section 206(a)(1) of the federal Fair Labor Standards Act[2] (the "FLSA") and various provisions of the Massachusetts Wage and Hour Laws.[3]

Defendants' sparse filing seeks dismissal of Count I for three reasons, each of which is set forth in one sentence with no supporting citations. First, Defendants emphasize that the First Amended Complaint neither states nor establishes that Plaintiff's compensation ever amounted to less than the federal minimum wage. Docket #27 at 2. Second, they note that two of the statutes cited in Count I—Mass. Gen. Laws c. 149 §§ 110, 101—govern certain employees' meal breaks, a subject on which Plaintiff's allegations are silent.[4] Id. Finally, Defendants argue in conclusory fashion that the facts in the First Amended Complaint "give no plausible basis" for Plaintiff's overtime claim under Massachusetts law. Id.

As for Count II, Plaintiff alleges that Defendants illegally deducted charges from her pay. She claims that when she started her job, she and Defendants agreed that her compensation would consist entirely of a fifty-five percent commission of the total bill for each client service she performed. Docket #23 ¶ 2. According to Plaintiff, Defendants violated this agreement by deducting from Plaintiff's commissions arbitrary and unspecified "service charges" of from one hundred to two hundred dollars each week. Id. These deductions included money for Defendants' overhead costs, which often amounted to more than one quarter of the service charge exacted in a given pay period. Id.

Plaintiff acknowledges that Defendants' employee handbook called for commissions of fifty-five percent "after the service charge is deducted." Id. ¶ 26. But she asserts that she never

---

[2] See 29 U.S.C. § 206(a)(1).

[3] Namely, Plaintiff contends that Defendants violated Mass. Gen. Laws c. 149 §§ 100, 101, 148 and c. 151 § 1A. She also argues Defendants ran afoul of a provision of the Department of Labor's field operating handbook. See Docket #23 ¶ 20.

[4] Section 100 instructs, "No person shall be required to work more than six hours during a calendar day without an interval of at least thirty minutes for a meal." Mass. Gen. Laws c. 149 § 100. Section 101 exempts certain employees from this general requirement. See id. § 101.

agreed to any such service charge, that Defendants never told her about the charge, and that she learned about the charge only from other employees. Id. ¶¶ 24, 36. Further, Defendant Rosa allegedly "admitted upon questioning" that the service charges deducted from Plaintiff's wages "were arbitrary[] and did not reflect any real or cognizant [sic] costs of products or materials." Id. ¶ 32. Plaintiff also accuses Defendant Rosa of repeatedly changing the service charge without notice and failing to update information about the charge for months at a time. Id. ¶¶ 30-31. Finally, Plaintiff alleges that her paychecks simply indicated her gross pay, with no accounting of the work she performed, no indication of the amount of the service charge for each pay period, and no itemized documentation of the costs and expenses on which the service charge purportedly was based.[5] Id. ¶ 30. Plaintiff maintains that these deductions contravene the purpose of section 148 of the Massachusetts Wage Act[6] as interpreted by the Massachusetts Supreme Judicial Court ("SJC") in Awuah v. Coverall North America Inc., 460 Mass. 484 (2011). See id. ¶ 34.

Defendants advance two arguments supporting dismissal of Count II. First, they seek to distinguish the SJC's Awuah opinion, which Plaintiff cited in the First Amended Complaint, from the present case. They highlight that the SJC's decision dealt with workers who, unlike Plaintiff, were misclassified as independent contractors by their employers. See Docket #27 at 2. They also contend that "[t]he SJC was not asked, and did not address, the question of whether an employer could deduct from an employee's pay expenses not statutorily mandated." See id. Second, Defendants argue that an earlier U.S. District Court opinion in the Awuah litigation, 740 F. Supp. 2d 240 (D. Mass. 2010), undercuts Plaintiff's theory of liability insofar as it expressly noted that no Massachusetts law prohibited an employer and employee from agreeing to shift

[5] It is unclear if by "gross pay" Plaintiff means pay net of the commission split and service charges.
[6] See Mass. Gen. Laws c. 149 § 148.

certain costs from the former to the latter so long as the employee earned minimum wage. See id. at 2-3. Defendants urge that the legal premise underlying Count II therefore lacks foundation. Id. at 3.

II. STANDARD

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must assume the complaint's well-pleaded facts to be truthful and must draw all reasonable inferences from those facts in the plaintiff's favor. Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). The Court also will consider any materials attached to a complaint or incorporated into a complaint by reference, as those materials are deemed part of the pleading itself. Trans-Spec Truck Serv. v. Caterpillar, 524 F.3d 315, 321 (1st Cir. 2008). However, the plaintiff's "legal labels and conclusions" are to be "isolate[d] and ignore[d]" at this stage. Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012); cf. Haag v. United States, 736 F.3d 66, 69 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 678) ("Although we view all well-pleaded facts in the light most favorable to the non-moving party, 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'"). The Court thus need not credit a party's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)).

To survive this motion, the First Amended Complaint's stated claims must be facially plausible. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at

555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Dismissal therefore lies if Plaintiff's well-pleaded facts do not "possess enough heft to show that [P]laintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and alterations omitted).

In order to adequately state her claim under the FLSA and the Massachusetts Wage Act, Plaintiff must allege that 1) she was Defendants' employee; 2) her work for Defendants involved an interstate activity; and 3) Defendants undercompensated her for her work. Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013). Defendants only challenge the viability of Count I as to the third prong, submitting that the First Amended Complaint does not plausibly allege undercompensation.

An employee may be paid entirely through commissions so long as he or she does not receive less than the applicable minimum wage for all hours worked. Mass. Att'y Gen., Opinion Letter MW-2003-004 on 100 Percent Commission-Based Pay and OT (Mar. 14, 2003). As for overtime pay, the FLSA and the Massachusetts Wage Act both provide that "[a] claim for unpaid overtime wages must demonstrate that the plaintiff[] w[as] employed 'for a workweek longer than forty hours' and that any hours worked in excess of forty per week were not compensated 'at a rate not less than one and one-half times the regular rate.'" Manning, 725 F.3d at 43-44 (quoting 29 U.S.C. § 207(a)(1)) (citing Román v. Maietta Const., Inc., 147 F.3d 71, 75 (1st Cir. 1998)); accord Mass. Gen. Laws c. 151, § 1A ("Except as otherwise provided in this section, no employer in the commonwealth shall employ any of his employees in an occupation . . . for a work week longer than forty hours, unless such employee receives compensation for his

employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed."); see also Swift v. AutoZone, Inc., 441 Mass. 443, 447 (2004) (quoting Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 40 (1st Cir. 1999)) ("[T]he overtime provisions under [Massachusetts] State law were intended to be 'essentially identical' to Federal law . . . ."). To calculate the "regular rate" on which overtime pay is based, one simply divides an employee's non-overtime compensation in a pay period by the number of hours worked. Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 358 (E.D.N.Y. 2007) (quoting Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)) (citations omitted); accord Mullally v. Waste Mgmt. of Mass., Inc., 452 Mass. 526, 534 (2008) (quoting 455 Mass. Code Regs. § 2.01). A violation has occurred if the quotient is less than the applicable minimum wage.

## III. ANALYSIS

### A. Count I

Count I references three separate violations: undercompensation for hours worked, failure to grant meal breaks as required by law, and failure to pay overtime. See Docket #23 ¶ 20 (citing 29 U.S.C. § 206(a)(1); Mass. Gen. Laws c. 149 §§ 100, 101, 148; Mass. Gen. Laws c. 151 § 1A). I address each component in turn.

I first consider Plaintiff's accusation that Defendants insufficiently compensated her for non-overtime work. The First Amended Complaint alleges that Plaintiff worked exclusively as a commissioned employee, resolving an uncertainty in the original complaint. See id. ¶ 13. However, the updated pleading still does not allege that Plaintiff's compensation ever fell below the minimum wage in any pay period. Furthermore, Plaintiff now concedes that she "does not allege that . . . [her wages fell] below minimum wage . . . ." Docket #28 at 11. As a matter of

law, this concession dooms Plaintiff's regular undercompensation claim. As set forth above, employees legally can be paid entirely by commission so long as their "regular rate" of pay equals or exceeds the minimum wage. See supra Section I.B. Plaintiff's allegation therefore does not make out a labor law violation unless her compensation fell below the minimum wage. Plaintiff has candidly admitted that this is not the case. The facts underlying her regular undercompensation claim, even if true, thus do not state a claim for which relief can be granted.[7]

Next, the First Amended Complaint cites to Massachusetts statutes governing certain employees' meal breaks. Docket #23 ¶¶ 1, 20 (citing Mass. Gen. Laws c. 149 §§ 100, 101). These citations have no support in the complaint's factual allegations: The complaint makes no mention of Plaintiff's meal breaks. Plaintiff's "bald assertion[]" thus merits no presumption of truth, Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)), and does not survive Defendants' motion.

Finally, Count I also alleges failure to pay overtime, at least in that it contains a citation to Massachusetts's overtime law. See Docket #23 ¶¶ 1, 20 (citing Mass. Gen. Laws c. 151§ 1A). Though Count I makes this gesture towards asserting an overtime claim, it does not actually state that Plaintiff ever worked more than forty hours in any pay period, nor does it accuse Defendants of failing to pay Plaintiff for any such work at the proper "time-and-a-half" overtime rate. To the contrary, Plaintiff states that her varied work schedule most often totaled twenty-five hours per week, id. ¶ 17—though Plaintiff's opposition filing seems to suggest that this figure includes

---

[7] Perhaps sensing this weakness, Plaintiff offers an alternative theory, based on a provision of the federal Department of Labor's field operating handbook, in support of this claim. See Docket #28 at 11-12. The provision governs employees who work for tipped wages. See id. Plaintiff does not allege that she worked for Defendants on that basis, and her argument that the provision nonetheless should govern here arises solely from her own public policy views. As Plaintiff offers no legal authority endorsing her claim that the provision should apply, I decline to adopt her expansive interpretation of the handbook.

only tasks for which Plaintiff actually earned commissions, see Docket #28 at 11. Further complicating matters, the memorandum filed by Defendants' attorneys devotes just one sentence to its barebones argument that the facts set forth in Count I "give no plausible basis for [an overtime] claim," Docket #27 at 2; and Plaintiff's opposition, in turn, does not address this undeveloped argument in any way.

The bottom line here is that Count I does not adequately allege an overtime claim. As stated above, the First Amended Complaint's only reference to Plaintiff's work schedule explains that "[her] work week varied, but most commonly she would work 25 hours a week." Docket #23 ¶ 17. This sentence does not sufficiently allege that Plaintiff even worked overtime in the first place, let alone that Defendants failed to compensate her at the rate required for that work. I therefore find that Count I "fail[s] to set forth 'factual allegations, either direct or inferential, respecting each material element'" of an overtime claim, and I find that Count I thus "engenders no viable theory of liability" on this point. Centro Medico del Turabo, Inc., 406 F.3d at 6 (quoting Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997)) (citations omitted).

Though I grant dismissal of Count I, I elect to do so without prejudice due to my confusion about the nature of Plaintiff's twenty-five-hour weekly work schedule. If this figure includes only commissioned work, and if Plaintiff means to say that she in fact worked more than forty total hours in a pay period and received legally insufficient compensation for overtime, then Plaintiff is given the opportunity to reformulate Count I to adequately state an overtime claim. Accordingly, I grant Plaintiff leave to file a Second Amended Complaint stating a revised overtime claim (the regular-time compensation claim having been conceded and the meal breaks claim inadequately pleaded) no later than twenty-one days from the date of this Order.

B. Count II

Next, Defendants seek dismissal of Count II by arguing that another judge of this Court has held that Massachusetts law permits the type of cost shifting Plaintiff alleges took place here. See Docket #27 at 2-3. In support of this argument, Defendants rely exclusively on Awuah v. Coverall N. Am., Inc., 740 F. Supp. 2d 240, 243 (D. Mass. 2010). I find this Awuah decision distinguishable from the present case and unhelpful to determining the legal sufficiency of Count II at this procedural stage.[8] I therefore find that Defendants have failed to show they are entitled to dismissal of Count II.

The U.S. District Court's Awuah opinion considered, in relevant part, whether Massachusetts law permits an employer and an employee to agree by contract to shift certain costs onto the employee. See Awuah, 740 F. Supp. 2d at 243. In Awuah, the parties' "franchise agreement" expressly authorized the employer defendant to deduct five categories of fees from the employee plaintiff's wages. See id. at 241-42. The District Court held that "no statute proscrib[ed] the parties from agreeing to this cost shifting so long as [the employee] earns at least minimum wage." Id. (citing 455 Code of Mass. Reg. 2.04(1) ("No deduction, other than those required by law and those allowed from lodging and meals . . . shall be made from the basic minimum wage.")).

[8] Defendants seem to have analyzed this Awuah opinion in response to Plaintiff's own citation in the First Amended Complaint to a subsequent Supreme Judicial Court decision in the Awuah litigation. See Docket #23 ¶ 34 (citing Awuah v. Coverall N. Am., Inc., 460 Mass. 484 (2011)). Setting aside Defendants' citation to the federal court opinion, Plaintiff's reference to the SJC's Awuah decision is puzzling. Among other things, that decision considered whether Massachusetts law permits an employer to defer paying an employee's wages until a customer pays the employer for the employee's work, as well as whether the Massachusetts Wage Act permits an employer and employee to agree to shift work-related insurance costs from the employer to the employee. See Awuah, 460 Mass. at 485. These lines of inquiry do not bear on Plaintiff's claims. The SJC did briefly address whether certain "special contracts" that "operate to require employees to buy their jobs from employers" violate public policy. See id. at 497-98. This seems to be the language on which Plaintiff seeks to rely; but the applicability of this dicta to Plaintiff's claims is unclear.

In any case, a legal argument contained in a complaint "is not a factual allegation deserving of indulgence under Rule 12(b)(6)." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 17 (1st Cir. 2003) (citing Chongris v. Bd. of Appeals of the Town of Andover, 811 F.2d 36, 37 (1st Cir. 1987)).

This fact pattern contrasts with Plaintiff's allegations in the instant case. Here, Plaintiff does not attack the legality of her employment agreement's terms. Rather, she contends that Defendants violated her employment agreement by deducting from her pay a "service charge" to which she never agreed in the first place. See Docket #23 ¶ 36 ("Such deductions were not agreed to by the Plaintiff."). Count II further alleges that Defendant Rosa "did not mention the service charge at the time of hire," id. ¶ 25, and "never discussed the service charge with the Plaintiff," id. ¶ 26. Indeed, Defendant Rosa allegedly has admitted that the deductions "were arbitrary[] and did not reflect any real or cognizant [sic] costs of products or materials." Id. ¶ 32. The District Court's Awuah opinion focused on contractual terms to which the parties in that case had agreed; its holding does not preclude Plaintiff from prosecuting her claim that the defendants here illegally deducted service charges from Plaintiff's wages in violation of the parties' agreement.

In short, Defendants' sole citation to Awuah in support of dismissal of Count II does not entitle them to the relief they seek. For this reason, their motion to dismiss is DENIED as to Count II.

## Conclusion

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim (Docket #26) is GRANTED WITHOUT PREJUDICE as to Count I, to the extent set forth above, and DENIED as to Count II. I grant Plaintiff leave to file a Second Amended Complaint stating a revised overtime claim on or before twenty-one days from the date of this Order, in strict accordance with this Order's instructions.

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge